WATSON et al., Appellants, v. ALDERSON et al.    146  333
                                                 d166  224
                                                 167  460

In Banc, December 6, 1898.

1. **Will:** WHO MAY CONTEST: JUDGMENT CREDITOR OF HEIR.   An owner
   of real estate made his will devising the portion two sons would have
   received had there been no will, to their wives.   The plaintiff being
   a creditor of such sons had before testator's death turned her claim
   into a judgment, and after his death levied her execution upon their
   interest in said land, bought it at the sale, received a deed therefor,
   and brought this suit to set the will aside.   *Held*, that, under the
   statute giving "any person interested in the probate of any will" the
   right to contest the same in the circuit court, the plaintiff was author-
   ized to maintain this suit.   But a mere creditor of the heir can not
   maintain such suit.   It must be a creditor whose right and title in
   the land devised, is concluded by the probate of the will.

   *Held*, by MARSHALL, J., that neither a judgment creditor nor a
   general creditor of an heir of the testator, has the right under the
   statute to contest the validity of a will.   This right is reserved to heirs
   only.   (SHERWOOD and WILLIAMS, JJ., concurring).

2. ——: ——: INTEREST OF JUDGMENT CREDITORS.   One who has
   turned his claim against the heir at law of the testator into a judg-
   ment, and then become the purchaser at the execution sale of what-
   ever interest and title such heir had in the testator's land, has identi-
   cally the same "interest" in such land as the heir himself, and the
   same right to maintain a suit to contest a will that practically disin-
   herits such heir, as the heir himself has.

3. ——: ——: INTEREST IN DEVOLUTION.   It is not "interest" in
   the estate of the deceased that authorizes any person to contest a
   will under the statute, but interest in the devolution of the property.

4. ——: WHEN WILL TAKES EFFECT AND JUDGMENT ATTACHES.   Descent
   is cast, and a will takes effect, by relation, at the moment of the death
   of the testator.   The lien of a judgment creditor of testator's heir
   attaches the moment the title is vested in such heir, and if a will dis-
   inheriting the heir is set aside, that lien attaches at the moment of
   testator's death; if the will is not set aside, the lien never attaches.

5. ———: RIGHT OF HEIR TO CONTEST.   No heir can be denied the right
to contest a will on the ground that such heir has received under the
will exactly the same proportional part of the estate that he would
have had had the testator died intestate.   The right of the heir to
contest the probate of a will is independent of the pecuniary result
to him of the contest.

*Per* MARSHALL, J.:   Under the will in this case the widow is
bequeathed *absolutely* all the furniture, bedding, carpets, stoves, etc.,
and a life estate in the home place.   *Held,* that the trial court erred
in holding that the plaintiff heirs take the same interest under the
will that they would have received had there been no will, and there-
fore such heirs, being persons interested in the probate of the will,
have a right to contest its validity.   (SHERWOOD, J., concurring).

*Appeal from St. Charles Circuit Court.*—HON. E. M.
HUGHES, Judge.

REVERSED AND REMANDED.

*H. C. Lackland* and *C. W. Wilson* for appellants.

(1)   The plaintiff's judgments were liens upon the
interests of these sons in the real estate at their father's
death and at the date of the probate, in common form,
of the alleged will.   She is a "person interested in the
probate of the will" in the sense of the statute, and is
consequently entitled in this proceeding to demand
that the alleged will shall be established in solemn
form, before her liens or apparent title shall be un-
seated or divested thereby.   *Smith v. Bradstreet,* 16
Pick. 264; *In re Langevins Will,* 47 N. W. Rep. 1133;
*Ryan v. Railroad,* 64 Tex. 239; *Stebbins v. Lathrop,* 4
Pick. 42; *Nolan v. Johns,* 108 Mo. 431; *Farrar v. Par-
ker,* 3 Allen, 556; *Zumwalt v. Zumwalt,* 3 Mo. 270;
*Murphy v. Murphy,* 2 Mo. App. 156; *State v. Horner,*
16 Mo. App. 191; *Hilliker v. Francisca,* 65 Mo. 598;
*Loehner v. Hill,* 19 Mo. App. 143; *In re McCune's Es-
tate,* 76 Mo. 200; *Bryant v. Allen,* 6 N. H. 116; *Pearce v.*

*Gould*, 143 Mass. 235; *Wiggen v. Swett*, 6 Metcalf, 197; *Dickey v. Malechi*, 6 Mo. 182; *Benoist v. Marvin*, 48 Mo. 48; *Lamb v. Helm*, 56 Mo. 432; *Hughes v. Burris*, 85 Mo. 665; *Bidwell v. Swank*, 84 Mo. 471; *Duty's Estate*, 27 Mo. 43; *Kenrick v. Cole*, 46 Mo. 85; *McIlrath v. Hollander*, 73 Mo. 113; R. S. 1889, sec. 8888 and 8890; *Lynn v. Guardian*, 1 Mo. 410; *Garland v. Smith*, 127 Mo. 567; *Norton v. Paxton*, 110 Mo. 456; *Lilly v. Tobbein*, 103 Mo. 477; *McFadden v. Catron*, 120 Mo. 252; *Maddox v. Maddox*, 114 Mo. 35; *Carl v. Gabel*, 120 Mo. 283. (2) The plaintiffs, Fannie A. Durrell, Anna M. Weems and Robert F. Alderson, are children and heirs at law of the decedent, Benjamin A. Alderson. The alleged will invests them with a different title and interest in the estate from what they would receive as heirs at law in the absence of a will. For, while the alleged will gives each of them a one seventh share of the estate, it subjects their interest in the real estate to the management and control of the executors named until such time as they (the executors) shall agree to sell and partition the proceeds. While on the other hand, in the absence of a will, they would at once, on the death of the father, have been invested with an untrammeled title to an undivided one seventh each in the land. They are clearly persons interested in the probate of the alleged will under our statute. R. S. 1889, sec. 8916; *Smith v. Hutchinson*, 61 Mo. 83; *Smithers v. Jackson*, 23 Md. 273; *Turner v. Timberlake*, 53 Mo. 371; *Russell v. Eubanks*, 84 Mo. 82; *Schorr v. Caster*, 120 Mo. 409; *Small v. Field*, 102 Mo. 104; *Watson v. Watson*, 110 Mo. 164; *Nichols v. Boswell*, 103 Mo. 151; *Long v. Timms*, 107 Mo. 512; *Murphy v. Carlin*, 113 Mo. 112; *Redman v. Barger*, 118 Mo. 568; *Shumate v. Bailey*, 110 Mo. 411; *Ringquest v. Young*, 112. Mo. 25; *Drake v. Crane*, 29 S. W. Rep. 990.

*T. F. McDearmon, W. C. Scarritt, Theo. Bruere & Son, W. F. McEntire* and *Frank Hagerman* for respondents.

(1) A mere judgment creditor of a child, who receives nothing under a parent's will, is not a "person interested in the probate of the will" within the meaning of the statute authorizing the contest of wills. *Shepard's Estate*, 170 Pa. St. 323; *Hickman's Estate*, 101 Cal. 609; *Sanborn's Estate*, 98 Cal. 103; *In re Hamilton*, 76 Hun. 200; *Franke v. Shipley*, 22 Ore. 104; *Barkley v. Donnelly*, 112 Mo. 561; Redfield on Wills, 538; *Carl v. Gabel*, 120 Mo. 283; *Catholic Church v. Tobbein*, 82 Mo. 418; *Lilly v. Tobbein*, 103 Mo. 477; *Roberts v. McMillan*, 9 Lea. 571; *Lynch v. Lynch*, 1 Lea. 526; *Wynne v. Spiers*, 7 Humph. 394; *Middleton v. Williams*, 47 N. J. E. 587; *In re Brown*, 47 Hun. 366; *McDonald v. White*, 130 Ill. 493; *Taff v. Hosmer*, 14 Mich. 249; Williams on Executors [Am. Notes], p. 399; *Middleditch v. Williams*, 2 Dickens, 575; *Ryan v. Railroad*, 64 Tex. 239; *Enloe v. Sherrill*, 6 Ired. 212; *Besancon v. Brownson*, 39 Mich. 388; *Carrol v. Huie*, 21 La. An. 561; *In re Benton's Estate*, 10 Wash. 533; *In re Ruppaner*, 37 N. Y. S. 429; *Jele v. Lemberger*, 45 N. E. Rep. 279; *Luther v. Luther*, 122 Ill. 558. (2) The appellants, Fannie A. Durrell, Anna M. Weems, and their husbands, and R. F. Alderson, children of Benjamin A. Alderson, have no right to contest the will in question because they receive their full shares under the will, and it in no particular prejudices their interests. Courts will not entertain and decide mere abstractions. *State ex rel. v. Robinson*, 54 Mo. 203; 1 Williams on Executors [Am. Notes], p. 399.

BRACE, J.—This is an appeal from a judgment of the circuit court of St. Charles county, sustaining a demurrer to plaintiff's amended petition.

On or about the fifth day of May, 1895, Benjamin A. Alderson late of said county, deceased, departed this life leaving surviving him as his only heirs at law, his children the plaintiffs Fannie A. Durrell, Anna M. Weems and R. F. Alderson, and the defendants David P. Alderson, Samuel B. Alderson, Bettie G. Watkins, William A. Alderson and Mabel H. Alderson.

Afterwards on the fifteenth of May, 1895, an instrument in writing was duly admitted to probate in the probate court of St. Charles county, as the last will and testament of said deceased, as follows:

"Know all men by these presents, that I, Benjamin A. Alderson, of the city and county of St. Charles and State of Missouri, declare the following to be my last will and testament:

## "*First.*

"I desire that all my debts be paid as soon as possible.

## "*Second.*

"I give and bequeath to my beloved wife, Mary L. Alderson as her own absolute property, all my furniture, bedding, carpets, stoves, pictures and kitchen utensils, at my residence at the time of my death. I also give and bequeath to my said wife, for and during her natural life, my home place, being my residence, and the lots connected therewith, on 6th and Perry streets, in the city of St Charles; in lieu of any dower or any interest my wife has or might have in any of my real and personal estate, I also give and bequeath to my said wife, Mary L. Alderson, for and during her natural life, annually, the sum of six hundred

dollars, so that my executors shall pay her at the end of every six months the sum of three hundred dollars.

## "Third.

"All of my personal estate, except such as is herein bequeathed to my wife, shall go and belong in equal parts to my children, Anna M. Weems, S. B. Alderson, Bettie G. Watkins, Fanny A. Durrell, R. F. Alderson, Mabel H. Alderson, the wife of my son W. A. Alderson, and W. Elmira Alderson, the wife of my son D. P. Alderson, excepting the sum of one dollar to be given to each of my two sons W. A. Alderson and D. P. Alderson.

## "Fourth.

"My executors shall take charge of, rent out and have exclusive control over my lands in the Point prairie and also my lands in the Cul de Sac bottoms, below the city of St. Charles, and shall pay the above six hundred dollars annually out of the income thereof, to my said wife, Mary L. Alderson; and the balance of said income, less whatever my executors may think necessary to meet current expenses, shall each year be given to my said children equally, except to my sons, W. A. Alderson and D. P. Alderson, whose wives shall be entitled to receive and retain their shares respectively, each one seventh. After the death of my wife all my real estate shall go and be divided as follows: To Anna Weems, S. B. Alderson, Fannie A. Durrell and R. F. Robinson each one seventh thereof; to Mabel H. Alderson, wife of my son W. A. Alderson, and W. Elmira Alderson, wife of my son D. P. Alderson, each one seventh thereof for her sole use and benefit; to my executors one seventh thereof in trust for my daughter, Bettie G. Watkins, and after her death then said one seventh to be divided among

her children then living; my executors to have full control over and disposition of said one seventh interest, to sell the same and re-invest the proceeds thereof, the income and proceeds of said interest, to be given to my daughter from time to time, for her support, as my executors may deem advisable and necessary.

"To my sons, W. A. Alderson and D. P. Alderson, I give no interest in my real estate. But it is my wish that my executors shall remain in control and manage all my real estate until all of them agree to sell the same or any part thereof, excepting my residence and lots connected therewith, in St. Charles, Missouri, bequeathed to my wife, aforesaid. I authorize my executors to at any time sell and convey all or any part of my lands and real estate, excepting my said residence and lots, with the same force and effect as I could have conveyed the same, and the proceeds of any and all such sales shall be divided according to the interest and rights of the legatees as herein provided; provided that my executors are charged with the payment to my wife of said sum of six hundred dollars annually during her life.

## "*Fifth.*

"I hereby appoint my sons, D. P. Alderson, R. F. Alderson and S. B. Alderson, executors of this my last will and testament, with the right of the majority to act, and request that they be not required to give bond as such executors.

## "*Sixth.*

"I hereby revoke all former wills.

"In witness whereof I have hereunto set my hand and affixed my seal in the presence of the subscribing witnesses, this sixth day of April, 1893.

"BENJAMIN ALDERSON (L. S.)

"We attest the above and foregoing will by subscribing our names hereto as witnesses in the presence of Benjamin A. Alderson, the testator, this the sixth day of April, 1893.

"D. W. FERGUSON,
ALBERT S. HUGHEY."

Afterwards on the seventeenth day of October, 1895, the plaintiff Mary A. Watson instituted this proceeding in the circuit court of St. Charles county by petition in which the heirs at law aforesaid, of the said Benjamin A. Alderson, the wives of the said William A. and David P. Alderson and the children of the said Bettie G. Watkins were made parties defendant. Afterwards at the February term, 1896, of said court and by leave thereof an amended petition was filed, in which two of said heirs at law, viz., Fannie A. Durrell and Anna M. Weems and their husbands were made parties plaintiffs, and afterwards at the August term, 1896, the petition by leave of court was further amended by interlineation, making another of said heirs at law, Robert F. Alderson, a party plaintiff. This amended petition, to which the demurrer was sustained, after setting forth said instrument of writing, the death of the said Benjamin A. Alderson, the death of his wife before his own death, the relationship of the aforesaid parties to him, and the probate of said instrument alleges in substance that the said Benjamin A. Alderson died seized and possessed of certain real estate, described in the petition, situated in the said county of St. Charles. That on the twenty-seventh of February, 1892, the plaintiff Mary A. Watson obtained judgment against the defendant William A. Alderson in the circuit court of Jackson county at Kansas City, in the sum of $4,192.52, and on the twelfth day of January, 1893, obtained judgment against the defendant David P. Alderson in the same court in the sum of

$1,873.45. That afterwards on the twenty-third day of November, 1893, she caused transcripts of said judgments to be filed, entered upon the judgment docket and recorded, as required by law, in the office of the clerk of the circuit court of the county of St. Charles, whereby the same became a lien upon all real estate owned by said defendants William A. and David P. Alderson in said county; that afterwards on the eighth day of May, 1895, she caused executions to be issued on said judgments, which on the eighteenth of June, 1895, were levied upon all the right, title and interest of the said William A. and David P. Alderson, in and to the real estate aforesaid of which the said Benjamin P. Alderson died seized as aforesaid; that in pursuance of a sale under said executions so levied, she afterwards on the thirtieth of August, 1895, became the purchaser of all the right and title and interest aforesaid of the said William A. and David P. Alderson in and to said real estate, and thereafter received a sheriff's deed therefor duly executed, acknowledged and dated September 4, 1895. That said instrument of writing admitted to probate as aforesaid, is not the last will and testament of the said Benjamin A. Alderson, was not made and published as such, as required by law; that at the time of its execution the said Benjamin A. was of unsound mind, and incapable of making a will, and that the execution thereof was procured by the undue influence of the said defendants William A., David B. and Samuel A. Alderson, over the said Benjamin A. and praying that an issue may be made up, whether said paper writing is or is not the will of said deceased; that the probate thereof be set aside, and the said paper be declared not to be the last will and testament of said deceased. The trial court in sustaining the demurrer, held that the plaintiff Mary A. Watson, upon the facts stated, was not a person inter-

ested in the probate of the will, and therefore was not authorized to contest its validity, and that this action could not be maintained by the plaintiffs Fannie A. Durrell, Anna M. Weems and Robert F. Alderson, for the reason that they take the same under the will that they would by inheritance, and hence are not interested in the probate of the will.

Whether or not the court committed error in so ruling, is the question on this appeal, to be determined by ascertaining who is a person interested in the probate of a will within the meaning of our statute of wills, which provides that:    "When any will is exhibited to be proven, the court or clerk may immediately receive the proof and grant a certificate of probate, or, if such will be rejected, grant a certificate of rejection."    R. S. 1889, sec. 8882.    "If any person interested in the probate of any will shall appear within five years after the probate or rejection thereof, and, by petition to the circuit court of the county, contest the validity of the will or pray to have a will proved which has been rejected, an issue shall be made up, whether the writing produced be the will of the testator or not, which shall be tried by a jury, or if neither party require a jury, by the court." *Ib.*, sec. 8888.    "The verdict of the jury or the finding and judgment of the court shall be final, saving to the court the right of granting a new trial, as in other cases, and to either party an appeal in matters of law." Sec. 8889.    "If no person shall appear within the time aforesaid, the probate or rejection of such will shall be binding, saving to infants . . . or persons of unsound mind, a like period of five years after their respective disabilities are removed." *Ib.*, sec. 8890.

1. As appears from the statement, when Benjamin A. Alderson died seized of the real estate in St. Charles county described in the petition, the plaintiff Mary A. Watson had judgment liens on all the real estate of the

defendants William A. and David P. Alderson, situated in that county, which liens might thereafter be ripened into legal title. If Benjamin A. died intestate, then at the moment of his death, the legal title to the undivided two-sevenths of said real estate descended to and vested in the said William A. and David P. and became subject to the lien of the judgments aforesaid, and by the subsequent proceedings on the judgments, was vested in the said plaintiff, Mary A. Watson. If, on the other hand, he died testate, and the instrument of writing admitted to probate in the probate court disinheriting the said William A. and David P. *was in fact* the will of the said Benjamin A., then the legal title to the undivided two-sevenths of said real estate never did vest in the said William A. and David P., nor become subject to the lien of said judgments, and by the proceedings on the same the said Watson acquired nothing. Is she, under such circumstances, a person interested in the probate of that instrument as the will of the said Benjamin A., within the meaning of the statute aforesaid? is the first question presented for determination. That she has a direct pecuniary interest in the final and conclusive determination of the question of fact, whether or not said instrument is the last will of said deceased is self-evident, since upon such determination depends her title to valuable real estate. If determined in the affirmative she has no title; if in the negative, she has title, and it would seem to follow necessarily, if the words, "any person interested in the probate of any will" are to "be taken in their plain, ordinary and usual sense" that she is such a person, and as such, authorized to institute this proceeding, in which only can that question of fact be conclusively determined. Is there anything in this statute, its purposes, history or the rulings under it, requiring that those words shall be construed in some other limited and

technical sense that would exclude her from the right
to contest the validity of this instrument, which, if es-
tablished, would deprive her of the legal title to valua-
ble real estate, which she would otherwise have? There
is nothing in the text of the act itself upon which such
a requirement can be based, and from the adjudications
in this State no such rule can be deduced. Although this
statute has been in force within its territorial limits, the
same in language and meaning as it is to day, ever
since the organization of the State government and be-
fore (1 Mo. Terr. Laws, ch. 39, p. 133, sec. 28, and
ch. 143, p. 407, sec. 32; 2 Laws of Mo. 1825, p. 792,
sec. 10; R. S. 1835, p. 618, secs. 15, 16, 17 and 18;
R. S. 1845, ch. 185, secs. 17, 31, 32 and 33; R. S. 1855,
ch. 167, secs. 16, 30, 31 and 32; G. S. 1865, ch. 131,
secs. 15, 29, 30 and 31; R. S. 1879, secs. 3974, 3980,
3981 and 3982), no case has yet reached the appellate
courts in which this question was ever raised or decided.
So that if there be a legislative intent that the words
"any person interested in the probate of any will" as
used in the statute, are to be used in a restricted or
technical sense by which a certain class of persons only
are to be embraced within its scope in which Mrs. Wat-
son is not included, the reason for it must be discov-
ered in the nature of the Act or its purposes as dis-
closed by the circumstances of its adoption. That this
Act was passed, in place of, and to remedy the defects
of the common law, upon the subject of the Probate
of Wills, there can be no doubt; the proceeding under
section 8882, answering to that of the probate of a will
in common form, and the proceeding under section
8888, to that of the probate of a will in "solemn form"
or "form of law" under the English law. *Benoist et al.
v. Murrin et al.*, 48 Mo. 48. Both are in the nature of pro-
ceedings *in rem* ( *Garvin v. Williams,* 50 Mo. 206; *Har-
ris v. Hays,* 53 Mo. 90), the former *ex parte* and

provisional, the latter *inter partes*, final and conclusive, and providing the only method under our law by which a will of a deceased person admitted to probate in common form can be contested. *Lyne v. Marcus*, 1 Mo. 410; *In re Duty's Est.*, 27 Mo. 43; *Kenrick v. Cole*, 46 Mo. 85.

At common law jurisdiction of the probate of wills was exercised by the ecclesiastical courts, and the executor of a will admitted to probate in common form, might at any time within thirty years be compelled, by a person having an interest to prove it in solemn form, and even when so proven the probate was not conclusive so far as the disposition of real estate was concerned over which the common law courts held that the ecclesiastical courts had no jurisdiction, hence in an action involving the title to real estate in the latter courts, the validity of a will might be contested by the party whose title would thereby be determined, although the will had been proven in solemn form. *Hoe v. Nelthrope*, 3 Salkeld, 154; 2 Swinburne on Wills, part VI, sec. XIV and notes; 1 Woerner, Admr. Law, sec. 215. To wipe out this distinction and make such probate conclusive as to wills disposing of real as well as personal property, was obviously the purpose and is the effect of the statute. In doing so, was it the intention of the legislature to deprive any person of the right to contest the validity of a will who would have had that right under the former law? Surely not. Hence, when the question under consideration first came up in this country, under the statute of Massachusetts of the year 1817 (Chp. 190) having the same purpose and effect as the Missouri statute, in the case of *Smith v. Bradstreet*, 16 Pick. 264, decided in 1834, the Supreme Court of that State held that an attachment creditor, having by such attachment a lien upon the real estate of the heir at law, had the right to contest the validity of a will by

which he was disinherited, Chief Justice SHAW, who delivered the opinion of the court, saying: "In this commonwealth probate of a will is conclusive upon a devise of real estate, as well as upon a bequest of personal property, and establishes title conclusively in the heir or devisee respectively. . . . . . . His (the creditor's) title depends upon proof of the will. An attachment constitutes a lien, a real interest in the land which may be followed up to perfect title. If the will is proved it defeats his title; if rejected, it establishes it. The trial of this fact in the probate court is conclusive upon this question, and the appellant has no other time, place or form to try it in." The logic of this position is unanswerable. The interest of such creditor in the probate of such a will is identically the same in character as that of the heir at law, and no argument can be made depriving him of the right to contest a will on the score of want of interest that would not deprive the heir at law of the same right. Descent is cast, and a will takes effect, by relation, at the moment of the death of the testator; neither heir or devisee prior to that moment had any interest in the estate of the deceased. A lien creditor whose lien attaches the moment that title is vested in his debtor by descent cast, although by virtue of his lien judgment he had no interest in the estate of the deceased, has the same direct and immediate interest in the probate of a will by which that title would be divested that an heir at law has. It is not interest in the estate of the deceased that authorized any person to contest a will under the statute, but interest in its devolution, in the probate of a will that determines that devolution.

If the common law still prevailed here on this subject; in an action in ejectment under that law between such a creditor and the heir or devisee for possession of the land after his lien had been ripened into legal

title as in the case in hand, he could have contested the validity of a will which would have defeated that title. Why, then, under the comprehensive terms of this statute, should he be deprived of that right? Certainly for no reason that can be drawn by analogy from that law.

In 1891 this question came before the Supreme Court of Minnesota in the case of *In re Langevin*, 45 Minn. 429, in which that court under a similar statute, following the Supreme Court of Massachusetts, held that, "The creditor in a judgment against the heir of one dying seized of real estate, which in the absence of a will, would pass to his heir, has an interest that entitles him to contest the probate of a proposed will of deceased, which if probated, will defeat the lien of his judgment." These two cases are the only cases that have been found in which this question has been passed upon by the courts of last resort in this country. The question may have been in the case of *Shepard's Estate*, 170 Pa. St. 323, decided by the Supreme Court of Pennsylvania in 1895, as appears from the statement of the case in the court below, 11 Pa. Co. Rep. 133, but if so it was not decided, either by the county court or the Supreme Court. In the language of the judge who delivered the opinion in the county court, "The question for solution is, has a creditor of an heir, who takes nothing by the will of his ancestor, standing to question the validity of the ancestor's will?" That court decided that question in favor of the creditors, and upon their appeal to the Supreme Court that court decided that question against the creditors, and said nothing further on this subject.

That decision falls far short of reaching the question in hand, and with it we have no fault to find, for it is conceded on all hands, that one who is simply a creditor of an heir of a deceased person, has no direct

and immediate interest in the devolution of the estate of the deceased; whatever interest he may have must necessarily be consequential, contingent and remote. To be a person interested in the meaning of the statute, he must be a person whose right or title is concluded by the probate, as the right and title of the plaintiff Watson to the real estate in question will be concluded by the probate of the will in this case. In such a case *Shepard's* case is not in point. No authority can be found in the reported cases in this country, so far as our investigation has extended, and none can be found in the text of the statute, its purposes, the character of the proceeding under it, in the analogies of the common or ecclesiastical law, or in reason, for holding that Mrs. Watson is not a person interested in the probate of the proposed will within the meaning of the statute. All these sources of authority are the other way. Hence we conclude that the court committed error in sustaining the demurrer as to her.

2. The ground upon which the demurrer was sustained as to the other plaintiffs, children of the deceased, is also untenable. Under the ecclesiastical law "when a testament is to be proved in *form of law* it is required that such persons as have interest, that is to say, the widow and next of kin to the deceased, to whom the administration of his goods ought to be committed, if he had died intestate, are to be cited to be present at the probation and approbation of the testament, in whose presence the will is to be exhibited to the judge, and petition be made by the party which preferreth the will; . . . . . . . whereupon witnesses are received and sworn accordingly and are examined, every one of them severally, not only upon the allegation or articles made by the party producing them; but also upon interrogations ministered by the adverse party." *Swinburne, supra.* Through the medium of such interrogatories

the next of kin were enabled to contest the validity of the will "as of common right." 1 Williams on Executors [7 Am. Ed.], 394. Of common right, because to them the administration of the goods of the deceased "ought to be committed if he died intestate." This common right is secured to them by our statute and is independent of the pecuniary results to them of the contest. They must be made parties to the contest, *Eddie v. Parke's Ex.*, 31 Mo. 513, because their title to the personal estate of the deceased is involved, and their right to administer it will be divested by the probate, or established by the rejection of the instrument, and this will be so whether they would have it so or not. *Benoist v. Murrin*, 48 Mo. 48; *McMahon v. McMahon*, 100 Mo. 97. The will must go to probate or rejection whether the result will be prejudicial to their pecuniary interests or not. The right of the next of kin to contest a will bequeathing personal property, in the ecclesiastical courts, is based upon the same principle as the right of an heir at law to contest the validity of a will devising real estate in the common law courts, and both rights are preserved by this statute. Hence, without elaborating this subject further, we hold that the demurrer should have been overruled *in toto* and for the error of the court in not so ruling, the judgment will be reversed and the cause remanded that it may be so done, and the issue, which the law and not the parties, makes, may be tried on its merits. GANTT, C. J., BURGESS and ROBINSON, JJ., concur in paragraph one, and GANTT, C. J., BURGESS and WILLIAMS, JJ., concur in paragraph two of the opinion. We all concur in reversing the judgment and remanding the cause for trial. ROBINSON, MARSHALL and SHERWOOD, JJ., expressing their views in separate opinion.

### CONCURRING OPINION.

MARSHALL, J.—I concur in the holding that the judgment of the circuit court should be reversed, and the cause remanded with directions to overrule the demurrer and cause an issue to be made up and tried. But I place my concurrence upon the ground that Fannie E. Durrell, Anna M. Weems, and R. F. Alderson, children of Benjamin A. Alderson, deceased, are persons interested in the probate of the will. I think the circuit court erred in overruling the demurrer and in holding that they take the same interest under the will that they would have received if there had been no will. Under the will the widow is bequeathed *absolutely* all the furniture, bedding, carpets, stoves, pictures and kitchen utensils, and a life estate in the home place or residence and the lots connected therewith. Without the will the property would have descended to the heirs, subject only to the widow's allowance, quarantine and homestead rights. For this difference in their rights I think the three heirs, who are plaintiffs, have a right to contest the validity of the will.

I do not agree to so much of the opinion as holds that Mary A. Watson, a judgment creditor of William A. Alderson, and David P. Alderson is a person interested in the probate of the will, within the meaning of section 8888, R. S. Mo. 1889, so as to entitle her to maintain this action. In my opinion there is no difference in principle between the rights of a judgment creditor and those of a general creditor in this regard. The only difference between them is the procedure necessary to reach the interest descended to the debtor heirs. The judgment creditor can proceed at law, by having an execution, presently, issued and the heir's interest seized and sold, while the general creditor can proceed at once, in equity, and be subrogated to the

heir's rights.   But neither can reach anything as long as the will stands because the heir is cut off by the will and they can only come in under the heir.

Without our statute of descents, or the common law on that subject, a child would have no right to any portion of the estate owned by the father at the time of his death, and without the statute of wills no man would have a right to direct the disposition of his property after his death.   The first was intended for the peculiar benefit of the heir, not of a creditor of the heir.   The second was to enable him who had earned or acquired property to dispose of it as to him seemed best, and the interest of the heir was not a controlling factor in the adoption of the law, but being in derogation of the rights of the heir under the statute of descents, he was given the right to contest the will to the end that he might take as heir and not as legatee.   In my judgment the legislature intended this to be a right personal to the heir, and not to confer any rights upon a creditor of the heir.

The fact that this is the first case of this character that has reached this court under this statute of wills, which has been a law ever since Missouri was a territory, is persuasive that the concensus of opinion of the bar has been against the existence of such a right in a creditor of an heir, for it is inconceivable that this is the first time the conditions here presented have arisen in our State.   *Venable v. Railroad*, 112 Mo. l. c. 125, and cases therein cited.   SHERWOOD, J., concurs, and WILLIAMS, J., concurs in second paragraph.