Garvin's Adm'r et al. v. Williams et al.

———◆———

ELIZABETH GARVIN'S ADMINISTRATOR et al., Appellants, v. JOHN P. WILLIAMS et al., Respondents.

1. *Equity — Guardian and Ward — Will — Donation to guardian — Undue influence — Presumptions of, how overthrown.* —Any one occupying a fiduciary relation so recently that the influence arising therefrom is presumed still to exist, cannot avail himself of bounty from his late ward, or other persons holding the relation, unless there is clear and distinct evidence that the influence has determined, and that the donor acted in a manner perfectly free, independent and unbiased; and the beneficiary must in all instances furnish this evidence. And the rule holds notwithstanding the fact that such proof is difficult, and perhaps almost impossible, to attain.

2. *Wills, proceedings to test — Beneficiaries competent — Witnesses — Construction of statute.* —In proceedings under the statute to test the validity of a will, the beneficiaries under the will are competent witnesses, notwithstanding the provisions of the statute concerning witnesses (Wagn. Stat. 1372, § 1), which provide that where one of the original parties to the contract or cause of action is dead, the other party shall not be permitted to testify. Such actions are in the nature of proceedings *in rem*, and simply amount to a revival of the same matter in the Circuit Court which has been previously had in the County Court. The same legal rules that govern the investigation in the County Court apply in the Circuit Court. The heirs at law and devisees are made nominal parties. But in truth the proceeding is *ex parte* and all are competent witnesses.

Garvin's Adm'r et al v. Williams et al.

*Appeal from St. Louis Circuit Court.*

*Glover & Shepley*, and *Harris*, with *Crews Letcher & Laurie*, for appellants.

I. There is no evidence to support the verdict, and it must not stand. (Spicely v. True, 14 Ind. 437; McDaniel v. Parks, 19 Ark. 671; Hicks v. Maness, *id.* 701; Peoria Bridge v. Loomis, 20 Ill. 235; Beal v. Cunningham, 42 Me. 362; Pool v. Huff, 20 Ga. 671; Miller v. Ratliff, 14 Ark. 419; Hunnewell v. Hobart, 40 Me. 28; Hall v. Wight, 9 Rich., Law, 392; Mattox v. Bryan, 19 Ga. 157; Eveleth v. Harmon, 33 Me. 275; Derwort v. Loomer, 21 Conn. 245; Zeigler v. Scott, 10 Ga. 389; Baker v. Stone, 36 Mo. 338; State v. Burnside, 37 Mo. 343; Alexander v. Harrison, 38 Mo. 238; Nelson v. Boland, 37 Mo. 432; Heyneman v. Garneau, 33 Mo. 565; Morris v. Barnes, 35 Mo. 412; Atkyns v. Nicholson, 31 Mo. 488; Webster College v. Tyler, 35 Mo. 268; Hart v. Leavenworth, 11 Mo. 629; Williams v. Brassfield, 9 Yerg. 270; Linton v. Schwab, 32 Verm. 612; 3 Gra. & Waterm. New Trials, 1184; 21 Conn. 245; 40 Me. 28; 2 Monr. 76; 66 Penn. St. 22; 64 Penn. St. 205; 3 Com. Bench, 150; Malachi v. Dickey, 6 Mo. 185; Hill v. Deaver, 7 Mo. 57; Boylan v. Meek, 4 Dutch. 476; 16 Mo. 317; 8 Mo. 437; Gra. & Waterm. New Trials, 1176–92; Harrison v. Cachelin, 23 Mo. 124; Burns v. Hayden, 24 Mo. 215; 45 Mo. 305; 3 Kans. 499.)

II. The testimony of a portion of the beneficiaries in the will, to acquit themselves of the charge of practicing fraud and undue influence on the mind of Petticrew to procure the will, was, under the statute (Wagn. Stat. 1872, § 1), incompetent, and was properly rejected. For what is this action brought? The petition says the defendants, on September 14, 1860, and prior thereto, did use fraud and undue influence over the mind of W. D. Petticrew, and so did induce him to make the will. If this allegation is true, the action will prevail; if it is not true, the action will fall. Petticrew was the victim of the fraud and undue influence — was one original party to the cause of the action. The defendants, as the fraudulent procurers of

the will, were the other parties to the cause of action. Petticrew is dead, and the conclusion is inevitable that they cannot be witnesses. If the fraud and undue influence charged upon the defendants is not the cause of action in this suit, what is the cause of action? The will itself is not the cause of action. That Petticrew made a will, is not complained of at all. He had a right to make a will. The complaint is that the defendants used fraud and undue influence upon him to procure from him a will he never made — to cheat and deceive him into an act he otherwise would not have done. It is perfectly plain to our minds that the fraud and undue influence is the cause of action, and that the defendants on one side and Petticrew on the other were the original parties to it. If this is not so, who were the original parties to the cause of action now on trial and in issue, and what was that cause of action? It may be said that no action would lie to set aside the will until the death of Petticrew. That is true. The action is one thing, the cause of the action is another. There may be a cause of action, and yet no action ever be commenced. The fraud and undue influence which induced Petticrew to make the will in this case took place prior to his death. They constituted the wrong done to Petticrew, but the action which is based on them was in abeyance until after his death. If a man be induced to deliver an escrow by fraud, said escrow to become his conveyance on a future event, and he dies, and the escrow is delivered after his death, the case will be like that at bar. No action would lie while there was no conveyance, but it will not be denied that an action would lie to cancel the deed when it has taken effect, for the fraud in procuring the escrow. This court has decided that " while the testator was living, the will in this case was ambulatory, but the principle was of no consequence when he was induced to make and publish it in view of impending death, and no opportunity of reconsideration was open to him. It would be strange indeed if any distinction was made and the doctrine did not apply to wills." (Garvin v. Williams, 44 Mo. 477.) If, then, there is no difference in the rules of dealing with fraud in procuring a will and fraud in procuring a deed, the rule of evidence should be the same.

Under the New York law similar to ours a party to the record, charged with undue influence in procuring a will, was held incompetent as a witness to show the validity of the will, because a party to the transaction. (Timon v. Claffy, 45 Barb. 438; Dyer v. Dyer, 48 Barb. 190; Van Alstyne v. Van Alstyne, 28 N. Y. 375; Stephens v. Hartley, 13 Ohio, 531; Hollister v. Young, 41 Verm. 159; Little v. Little, 13 Gray, 256; Looker v. Davis, 47 Mo. 140; State *ex rel.* Townsend v. Meagher, 44 Mo. 356; Smith v. Smith, 1 Allen, 184; Fisher v. Morse, 9 Gray, 440; Ela, Ex'r, v. Edwards, 97 Mass. 318; Granger *et al.* v. Bassett, 98 Mass. 468; Shailer v. Bumstead, 99 Mass. 130; Garvin v. Williams, 45 Mo. 477.)

III. When fiduciary relation existed and a gift has been made, and the parties were so situated that undue influence could have been used, the law presumes that it was, and the donee must prove that he did not create the donor's intention to give, and the gift was not the result of undue influence or fraud. (Bergen v. Udell, 31 Barb. 9; White v. Mead, 2 Irish Eq. 420; Huguenin v. Basely, 14 Ves. 273; Houghton v. Houghton, 11 Eng. Law & Eq. 138; Irish v. Smith, 8 Serg. & R. 519; Berdoe v. Dawson, 34 Beav. 603.) The donee must prove he did not produce the intention to make the gift, or it cannot stand. (Billage v. Southee, 9 Hare, 540; Taylor v. Wilburn, 20 Mo. 306.) It must appear that before the execution of the will no undue influence had been used to procure it.

IV. The presumption of fraud and undue influence must be repelled beyond a reasonable doubt. (Goddard v. Carlisle, 9 Price, 184; Meek v. Perry, 36 Miss. 190; Davis v. Davis, 4 Giff. 419; 13 Beav. 241; Wright v. Proud, 13 Ves. 139; Vreeland v. McClelland, 1 Bradf. Sur. 432; Whelan v. Whelan, 3 Cow. 576; Breed v. Pratt, 18 Pick. 117; Grosvenor v. Sherrat, 28 Beav. 665; 34 N. Y. 167; Tyler v. Gardner, 35 N. Y. 595-6; Whelan v. Whelan, 3 Cow. 384; Darley v. Darley, 3 Brady, 490.)

*Sharp & Broadhead*, for respondents.

I. This court has repeatedly declared that it will not interfere with the verdicts of juries, where there is a question as to the

weight of evidence.   (Irwin v. Riddlesburger, 29 Mo. 341 ; Mc-Murray v. Taylor, 30 Mo. 262 ; State v. Burnside, 37 Mo. 346 ; Markle v. Langner, 46 Mo. 393 ; King v. Moon *et al.*, 42 Mo. 553 ; Faugman v. Hersey, 43 Mo. 122.)

II.  As all the instructions asked by the plaintiffs were given, and given in such form as to present the propositions of law in the strongest light before the jury, the plaintiffs have no right to complain.   And it presents an additional reason why the verdict should not be disturbed.   These instructions not only comment on the evidence, but they argue the law and the facts of the case in favor of the plaintiffs.   The third instruction declares that if the jury find certain facts to be true, "they ought to find that the influence of Williams over the mind and will of Petticrew had not ceased to exist on the 12th of September, 1860."   The fourth instruction declares that if certain other facts exist, the jury ought to find that the influence of Williams had not ceased to exist on the 13th of September, 1860.   The fifth instruction given for plaintiff declares that if the jury find that the influence of Williams existed on the 12th of September and the 13th of September, in the transactions of those dates, they will be warranted in concluding that the will was procured by undue influence of Williams. This is clearly an argument from the facts made by the court, from which the court draws the conclusion that certain other propositions are true, of which there is not a particle of evidence; and the court then tells the jury that they ought to come to the same conclusion, and that from these conclusions they are warranted in concluding, further, that the will was procured by undue influence and is void.   This is commenting on the evidence — telling the jury what the court thinks the evidence proves, and what the jury ought to find and are warranted in finding.   The jury had the right to disregard these suggestions.

III.  Counsel then proceeded to argue at some length that the case contained evidence to support a verdict.

WAGNER, Judge, delivered the opinion of the court.

The instructions given by the court on the trial of this cause were unexceptionable, provided there was evidence sufficient to

justify them. When this cause was here before we held that a transaction like the will in question, between a guardian and ward, could not stand if the period between the making of the will and the coming of age of the ward was short, unless the circumstances showed in the most satisfactory manner, and beyond a reasonable doubt, the most entire good faith on the part of the guardian. (Garvin v. Williams, 44 Mo. 465.) When a ward has but recently arrived at age, any acts of his conferring an advantage or bounty upon his late guardian excite the strongest suspicions, and are viewed by the courts with an almost invincible jealousy. They are considered as constructively fraudulent on account of the confidential relations existing between the parties. They are withdrawn from the operation of the ordinary rules of evidence, and the burden is devolved on the beneficiary of showing that the gift or arrangement was fair and conscientious and beyond the reach of suspicion. A rule of public policy and pure morals lies at the foundation of this principle and demands its stringent enforcement. Any one occupying a fiduciary relation so recently that the influence is presumed to still exist cannot avail himself of a bounty from his late ward, or other person holding the relation, unless there is clear and distinct evidence that the influence has determined, and that the donor acted in a manner perfectly free, independent and unbiased. And the beneficiary must in all instances furnish this evidence. That it is not easily attainable I am aware, and therefore learned judges have said that it was almost impossible to make this proof. I have in vain searched this record to find any evidence introduced by the defendants, the beneficiaries in the will, to overthrow and repel the presumptions which the law raises that the will was procured and made while the testator was under the immediate influence of those who were to be benefited by it. Without that evidence the will cannot stand. It is not a question of the weight of evidence, with which we would not interfere, but it is a case of an entire want of evidence. The instructions, therefore, given for the defendants, while good enough as abstract propositions of law, were erroneous because there was no evidence to support them. This must lead to a reversal of the case.

But there is a question presented by the record in respect to the action of the court in rejecting certain evidence offered by the defendants. On the trial some of the beneficiaries under the will, and who were parties to the suit, were introduced as witnesses, but they were objected to, and the court ruled that they were incompetent. Exceptions were duly taken.

For the appellant it is insisted that the court committed no error in holding that the witnesses were incompetent to testify, and the argument is based on that section of the statute which allows parties to give evidence, but provides "that in actions where one of the original parties to the contract or cause of action in issue and on trial is dead, or shown to be insane, the other party shall not be admitted to testify in his own favor." This question has never been raised before in this court, under the statute. In the case of Tingley *et al.* v. Cowgill *et al.*, 48 Mo. 291, all the parties to the record, both the contestants of the will and those who took under it, were admitted to testify, and the point was not even made or alluded to. The cases cited to sustain the ruling of the court are adjudications where either the estate of the deceased person was a party, or where the contest arose out of some contract or agreement with the deceased in his lifetime, and in which his assignee or representative was a party.

But proceedings in reference to the establishment or invalidating of a will stand on a different foundation from ordinary actions at law or causes of action. They are of the nature of a proceeding *in rem*, and simply amount to a revival of the same matter in the Circuit Court which has been previously had in the County Court. The same legal rules that govern the investigation in the County Court apply in the Circuit Court. The heirs at law and devisees are made nominal parties, but in truth the proceeding is *ex parte* and all are competent witnesses. (See Dickey *et al.* v. Malechi, 6 Mo. 177.)

The section in our statute, now under consideration, is a precise and literal copy of the statute of Massachusetts, and in that State the question has been directly passed on, and received a definite construction. The case arose upon contesting the will of Miss Bumstead. Shailer and Hayden were devisees under the will, and

Garvin's Adm'r et al. v. Williams et al.

also executors, and it was alleged that they procured the will to be made by undue influence and fraud. Upon the trial they were permitted to give testimony in their own behalf. This was assigned for error. The Supreme Court, in reviewing the question, say: "It was further objected that Hayden and Shailer were not competent witnesses under the statute, but this is not a case where one of the original parties to the contract or cause of action, in issue and on trial, is dead. They are not parties in a representative capacity; there was no cause of action in existence till the death of the testatrix. The controversy is between living parties. The testatrix is in no sense a party to the original cause of action. Her act was only the subject-matter of the investigation. The rule contended for would exclude parties on both sides in all cases where litigation should arise growing out of the act of another during life. We cannot construe the proviso of the statute so as to exclude as witnesses all those who may be parties on one side or the other in all probate appeals like this, and we find no error in the ruling." (Shailer v. Bumstead *et al.*, 99 Mass. 112.)

With this reasoning we are satisfied. The real question in the case is whether there is a will or not, and upon that question all the parties have a right to testify.

We think the court also erred in excluding parts of the depositions of Steele and Eliza Garvin, offered by the plaintiffs. They were both upon questions concerning which the defendants gave testimony, and were properly explanatory of and connected with that testimony. The statement of Steele was material, and when he says the invitation of Williams was in a cool, formal and distant manner, I think the description was sufficiently particular.

That portion of Eliza Garvin's deposition which mentioned the kindness of Mrs. Garvin for Petticrew, the testator, was certainly competent. The whole theory of the defense, running throughout the trial, was that she cared nothing for him. The plaintiffs were entitled to the evidence to show its falsity.

For the ruling of the court in rejecting testimony, the judgment must be reversed and the cause remanded. The other judges concur.